**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT E. FREEMAN,**

               **Plaintiff,**            **7:11-cv-1276
                                                    (GLS)**

       **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Conboy, McKay Law Firm<br>Carthage Office<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER,<br>ESQ. |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | DAVID L. BROWN<br>Special Assistant U.S. Attorney |
| Mary Ann Sloan<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

### I. Introduction

Plaintiff Robert E. Freeman challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Freeman's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On October 19, 2004, Freeman filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since September 15, 2003. (*See* Tr.[1] at 104-08, 800-02.) After his applications were denied, (*see id.* at 65-69), Freeman made an untimely request for a hearing before an Administrative Law Judge (ALJ). (*See id.* at 70-75.) Because good cause was demonstrated, his late filing was excused and a hearing was held on May 31, 2006. (*See id.* at 75, 813-40.) On August 25, 2006, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.

2

Social Security Administration Appeals Council's denial of review. (*See id.* at 7-9, 36-47.)

Freeman commenced an action wherein he sought review of the Commissioner's determination. (*See* Dkt. No. 1, 7:07-cv-379.) By stipulation, however, the parties agreed to a remand pursuant to sentence four of 42 U.S.C. § 405(g). (*See* Dkt. No. 17, 7:07-cv-379) The Appeals Council then remanded the case to the ALJ for further proceedings. (*See* Tr. 868-71.) Following a second hearing on July 9, 2009, Freeman's applications were again denied by the ALJ. (*See id.* at 848-58, 1141-82.) The Appeals Council declined jurisdiction, and Freeman commenced this action seeking review of the Commissioner's final determination. (*See id.* at 841-43; Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. No. 6.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 9, 11.)

### III. Contentions

Freeman contends that the Commissioner's decision is tainted by errors of law and is not supported by substantial evidence. (*See* Dkt. No. 9 at 13-25.) Specifically, Freeman claims that the ALJ: (1) erred by failing to find that his affective mood disorder meets listing 12.04; (2) improperly

3

refused to accord controlling weight to the opinions of his treating physicians; (3) mistakenly evaluated his credibility; and (4) improperly concluded that suitable significant work in the national economy exists. (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (*See* Dkt. No. 11 at 6-16.)

## IV.  Facts

The court adopts Freeman's undisputed factual recitations.  (*See* Dkt. No. 9 at 2-9.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

**A.     Listing 12.04**

First, Freeman argues that "[t]he Commissioner erroneously failed to find that [his] affective disorder meets listing 12.04." (Dkt. No. 9 at 13-15.) Specifically, Freeman claims that his affective disorder meets the criteria of Listing 12.04(C). (*See id.*) In opposition, the Commissioner argues that the two-year durational requirement of listing 12.04(C) was not met, nor were Freeman's symptoms or signs currently attenuated by medication or therapy as required by the listing. (*See* Dkt. No. 11 at 8-9.) Although for reasons other than those articulated by the Commissioner, the court agrees that the listing criteria were not met.

As relevant here, affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome,"[2] constitute a listing level impairment—and presumptive disability—provided that the claimant has a:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . .
>
> 1. Repeated episodes of decompensation, each

---

[2] "Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. pt. 404, subpart P, app. 1, § 12.04(C).

of extended duration . . . .

20 C.F.R. pt. 404, subpart P, app. 1, § 12.04(C); *see* §§ 404.1520(d), 416.920(d). Episodes of decompensation[3] are rated on a four-point scale, including: none, one or two, three, and four or more. *See id.* §§ 404.1520a(c)(4), 416.920a(c)(4). "[R]epeated episodes of decompensation, each of extended duration," the required "C criteria" at issue here, "means three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks." *Id.* pt. 404, subpart P, app. 1, § 12.00(C)(4). An ALJ may find repeated episodes of decompensation, each of extended duration where the claimant has had "more frequent episodes of shorter duration or less frequent episodes of longer duration," but such a finding is reached by "us[ing] judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

Here, the ALJ's determination that Freeman "does not have an

---

[3] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C)(4).

6

impairment or combination of impairments that meets or medically equals one of the listed impairments" is supported by substantial evidence.[4]  (Tr. at 855.)  Particularly, the ALJ considered whether any "C criteria" were present, and he ultimately determined that, while Freeman "experienced one or two extended duration episodes of decompensation," the evidence did not establish repeated episodes of decompensation.[5]  (*Id.*)  The evidence supports the ALJ's determination in this regard.  Since his alleged onset date of September 15, 2003, Freeman has experienced only two episodes of decompensation for extended periods of time, and those incidents occurred nearly three years apart from each other .  (*See* Tr. 592-95, 800, 1012-14.)  Thus, those occurrences fall short of the requirement for "repeated episodes of decompensation."  20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C)(4).  Even considering another extended episode, which occured in August 2002—predating the alleged onset date by more than one year—and four shorter incidents, occurring in October 2002, October 2003, November 2003 and January to February 2008, respectively, there

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

[5] Freeman mistakenly contends that the ALJ's finding of one or two extended episodes of decompensation necessarily satisfied the "C criteria" in this case.  (*See* Dkt. No. 9 at 15.)

7

has been no period of time where Freeman experienced the requisite episodes of decompensation.  (*See* Tr. at 318-19, 330-31, 345-50, 412-14, 955-58.)  Thus, the ALJ did not err.

## B.     Weight Afforded to Opinions of Treating Physicians

Next, Freeman asserts that the ALJ erred by failing to assign controlling weight to the opinions of his treating physicians; he also claims that the ALJ ignored opinions from two treating physicians that he was unable to work full time.  (*See* Dkt. No. 9 at 16-20.)  The Commissioner counters that the residual functional capacity (RFC) determination is consistent with the opinions of Freeman's treating physicians; thus, the Commissioner seems to suggest that the ALJ gave those opinions controlling weight even though not explicitly stated in his decision.  (*See* Dkt. No. 11 at 10-11.)  The court agrees with the Commissioner.

Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§ 404.1537(c)(2), 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  However, opinions from treating sources on issues reserved to the Commissioner, i.e., dispositive issues,

8

are not given "any special significance."  20 C.F.R. §§ 404.1537(d)(3), 416.927(d)(3).

Here, it is obvious that the ALJ appropriately assigned controlling weight to the opinions of Freeman's treating physicians despite his failure to explicitly state as much.  The ALJ carefully recounted the physicians' opinions—nearly identically to the way Freeman has restated them in his brief—regarding Freeman's impairments, and the RFC determination reflected Freeman's resultant limitations.  (*Compare* Tr. at 855-57, *with* Dkt. No. 9 at 16-19.)  Thus, the ALJ committed no error regarding his assignment of weight to the opinions of Freeman's treating physicians.

As for the ALJ's failure to acknowledge the opinions of two treating sources, each of whom opined that Freeman could only work part-time, (*see* Tr. at 281, 1126), those opinions "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case."  20 C.F.R. §§ 404.1527(d), 416.927(d); *see Willis v. Comm'r of Soc. Sec.*, No. 3:09-cv-297-J-20MCR, 2010 WL 3245449, *7 & n.10 (M.D. Fla. Aug. 17, 2010) (stating that an "opinion[] that Plaintiff could only work part time . . . [is an] administrative finding[] reserved to the Commissioner").  Although the ALJ

9

did not make any specific findings about Freeman's ability "to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," which means eight hours a day for five days a week or an equivalent schedule, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996), substantial evidence in the record supports Freeman's ability to perform work on a regular and continuing basis.

At the time of the hearing, Freeman had been—for eight months—working at a super market stocking produce four or five days a week for six hours at a time.  (Tr. at 1147, 1163-64.)  Additionally, in March 2004, a state agency medical consultant opined that Freeman was "not significantly limited" in his "ability to complete a **normal workday and workweek** without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (*Id.* at 516 (emphasis added).)  Indeed, the ALJ acknowledged the consultant's opinion that Freeman "maintains the residual functional capacity to perform substantial gainful activity."  (*Id.* 856; *accord id.* at 517.)

C.   **Credibility Determination**

Freeman next alleges that the ALJ "failed to adequately support his

finding against [Freeman]'s credibility and he failed to properly consider the credibility implications of [Freeman]'s attempts at work." (Dkt. No. 9 at 20-23.)  The Commissioner counters, and the court agrees, that the ALJ's credibility determination was not infirm.  (*See* Dkt. No. 11 at 13-14.)

An ALJ must consider a claimant's subjective complaints of limitations resulting from his impairments, including those from pain, in gauging his RFC.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1539(a), 416.929(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 61 Fed. Reg. 34483, 34485-86 (July 2, 1996).  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as he sets forth his "reasons with

sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

In this case, the ALJ's determination that Freeman's "subjective complaints are not fully credible" is supported by substantial evidence in the record. (Tr. at 857.) As pointed out by Freeman in his brief, he testified "that he has difficulty concentrating, becomes manic, and yells at people for no good reason." (Dkt. No. 9 at 21; *see* Tr. at 1153-54.) Freeman also explained that he suffers from a shoulder impairment that has improved with physical therapy. (*See* Tr. at 1154-55.) Despite his subjective allegations of limitation, Freeman is able to maintain reasonable daily activities like driving, cleaning the apartment where he lives alone, buying groceries, maintaining personal hygiene, and visiting some family and friends. (*See id.* at 1145, 1156-57.) Contrary to Freeman's argument, the ALJ also clearly considered the relevant factors set forth in 20 C.F.R. §§ 404.159(c)(3), 416.929(c)(3), and his findings with respect to those factors were supported by substantial evidence. (*See* Tr. at 856-57.)

**D.    Vocational Assessment**

Lastly, Freeman contends that substantial evidence does not support the ALJ's determination that significant jobs exist in the national economy that he can perform.  (*See* Dkt. No. 9 at 23-25.)  Specifically, Freeman argues that his ability to respond appropriately to supervision, coworkers, and usual work settings, and to deal with changes in a routine work setting, is limited to the point where he cannot "successfully transition to other work existing in significant numbers in the national economy." (*Id.* at 24-25.)  In response, the Commissioner asserts that the hypothetical question posed to the vocational expert (VE) was supported by substantial evidence .  (*See* Dkt. No. 11 at 14-16.)  The court agrees with the Commissioner.

After concluding that a claimant cannot perform his past relevant work, if any, the ALJ must consider whether the claimant "can make an adjustment to other work" based upon his RFC and vocational factors.  20 C.F.R. §§ 404.1520(g), 416.920(g).  As was done here, a VE should be used when the claimant suffers from nonexertional impairments that significantly limit basic work activities, such as his ability "to respond appropriately to supervision, coworkers, and usual work situations; or to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4 (1985); *see* 20 C.F.R. §§ 404.1521(b)(5)-(6), 416.921(b)(5)-(6), *Bapp*

13

*v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986). A hypothetical question posed by the ALJ must be based on substantial evidence; if it is, the ALJ may rely on a VE's responsive testimony in rendering a determination about the claimant's ability to do other work. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *Wavercak v. Comm'r of Soc. Sec.*, No. 5:07-cv-482, 2010 WL 2652201, at *5 (N.D.N.Y. June 25, 2010).

Here, the hypothetical question posed to the VE—which fully accounted for Freeman's nonexertional limitations as opined by his treating physicians, (*see* Tr. 856, 1173 )—was supported by substantial evidence as indicated above. (*See supra* Pt. VI.B.) Specifically, the ALJ inquired of the VE whether any jobs exist in significant numbers that Freeman could perform assuming he has the ability to, among other things, "understand, remember and perform simple jobs[,] . . . work in a low stress environment defined as only occasional decision making and occasional interaction with the public, coworkers and supervision; and occasional changes in the work setting." (*Id.* at 1173.) The VE opined that, despite the hypothetical limitations, there are jobs in significant numbers that Freeman can perform. (*See id.*) The ALJ was entitled to rely on the VE's testimony because the hypothetical was based on substantial evidence. *See Dumas v.*

*Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).  Accordingly, the ALJ's determination was free from error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Freeman's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 22, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court